UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAXIMINIO RODRIGUEZ,

        Plaintiff,

v.

TACO MIX LLC, TACO MIX II LLC, TACO MIX III LLC, TACO MIX BROOKLYN LLC, TACO MIX STATEN ISLAND LLC, JORGE SANCHEZ, ALEJO SANCHEZ, and JOANNA SANCHEZ,

        Defendants.

**ORDER**

21 Civ. 03644 (ER)

Ramos, D.J.:

      Maximinio Rodriguez brought this action on April 23, 2021, against defendants Taco Mix LLC, Taco Mix II LLC, Taco Mix III LLC, Taco Mix Brooklyn LLC, Taco Mix Staten Island LLC, Jorge Sanchez, Alejo Sanchez, and Joanna Sanchez, alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Doc. 1. Rodriguez alleges that defendants failed to pay him the lawful minimum wage, overtime compensation, and spread of hours compensation, and failed to provide proper wage notices and wage statements. *Id.* Before the Court is the parties' motion for settlement approval. Doc. 33. For the following reasons, the motion for settlement approval is DENIED.

**I. LEGAL STANDARD**

      In this Circuit, parties cannot privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015). The parties therefore must satisfy the Court that their agreement is "fair and reasonable." *Beckert v. Ronirubinov*, No. 15 Civ. 1951 (PAE), 2015 WL 8773460, at *1 (S.D.N.Y. Dec. 14, 2015) (citation omitted). In determining whether the

proposed settlement is fair and reasonable, "a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Id.* (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)). Courts may reject a proposed FLSA settlement where the parties do not provide the basis for the recovery figure or documentation supporting the reasonableness of the attorneys' fees, or if the settlement agreement includes impermissible provisions such as restrictive confidentiality clauses or overbroad releases. *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176–82 (S.D.N.Y. 2015), *cited with approval in Cheeks*, 796 F.3d at 205–06.

## II.  DISCUSSION

### A.  Range of Recovery

The proposed settlement agreement provides for a recovery of $48,000. Doc. 33 at 2; Doc. 33-1 at 2. Rodriguez's counsel will receive $16,000 for attorneys' fees, which constitutes approximately one-third of the settlement amount, and $400 in costs. Doc. 33 at 3; Doc. 33-1 at 2. After attorneys' fees and costs, Rodriguez will receive $31,600. Doc. 33 at 3; Doc. 33-1 at 2.

Rodriguez estimates his maximum recovery—were he to prevail on all issues at trial—would be $29,779.97, including partial liquidated damages, costs, interest, and attorneys' fees. Doc. 33 at 2. Thus, the settlement constitutes full payment of his claims. *See id* at 2–3.

The settlement resolves *bona fide* disputes and reflects a reasonable compromise that fairly compensates Rodriguez in light of the uncertainties and litigation risks. The Court finds

that the proposed settlement amount is reasonable. *See Garcia v. Good for Life by 81, Inc.*, No. 17 Civ. 7228 (BCM), 2018 WL 3559171, at *2 (S.D.N.Y. July 12, 2018) (concluding that the settlement amount was a "reasonable compromise of disputed issues") (citation omitted).

### B. Attorneys' Fees & Costs

The Court finds the proposed attorneys' fees and costs to be reasonable. Rodriguez's attorneys will receive $16,000 in fees, or one-third of the settlement, and $400 in costs. Doc. 33 at 2. This is a reasonable percentage, as "courts in this District routinely award one third of a settlement fund as a reasonable fee in FLSA cases." *Lazo v. Kim's Nails at York Ave., Inc.*, No. 17 Civ. 3302 (AJN), 2019 WL 95638, at *2 (S.D.N.Y. Jan. 2, 2019) (citation omitted). Nonetheless, "even when the proposed fees do not exceed one third of the total settlement amount, courts in this circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." *Id.* "The lodestar amount is 'the product of a reasonable hourly rate and the reasonable number of hours required by the case.'" *Id.* (quoting *Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, No. 11 Civ. 3186, 2014 WL 3955178, at *1 (S.D.N.Y. Aug. 13, 2014)).

Rodriguez's counsel has submitted billing records for the following individuals: (1) Matthew Madzelan, an associate, billed at a rate of $300 per hour; (2) Priscilla Sandoval, a paralegal, billed at a rate of $100 per hour; and (3) Melissa Marciano, a paralegal, billed at a rate of $100 per hour. *See* Doc. 33-2. In similar cases, courts have awarded wage-and-hour attorneys hourly rates ranging from $200 to $600 per hour. *See, e.g., Rosendo v. Everbrighten Inc.*, No. 13 Civ. 7256 (JGK) (FM), 2015 WL 1600057, at *8-9 (S.D.N.Y. Apr. 7, 2015) (finding rates for attorneys from small wage and hour firm to be $200 to $425, and awarding between $225 and $400); *Guallpa v. N.Y. Pro Signs Inc.*, No. 11 Civ. 3133 (LGS) (FM), 2014 WL 2200393, at *10-

3

12 (S.D.N.Y. May 27, 2014). And "[h]ourly rates for paralegals of $100 to $150 per hour are typical for awards in this [d]istrict." *Diaz-Caballero v. Midtown Catch Corp.*, No. 18 Civ. 4672 (AT), 2020 WL 8880944, at *2 (S.D.N.Y. Apr. 15, 2020) (alterations in original) (citation omitted)

The records submitted by Rodriguez's counsel show that they spent 81.09 total hours on the case, with the two paralegals working 6.7 hours, and Madzelan working the remaining 74.39 hours. *See* Doc. 33-2. Of those 74.39 hours, Madzelan bills .4 hours at a rate of $125—rather than $300—per hour.[1] *See id.* Thus, Rodriguez's attorneys' fees total $23,025. *Id.* Additionally, Rodriguez's costs total $402, consisting of the filing fee. *Id.* Therefore, the total fees and costs sum to a lodestar of $23,427, which exceeds the settlement allocation of fees and costs in this action ($16,400).

### C. Release Provision

The settlement agreement includes a release provision that is broader than what is typically approved in this District. *See* Doc. 33-1 at 3. The provision reads:

> Plaintiff, . . . freely and irrevocably relinquishes, releases, and waives all possible complaints, causes of action, liabilities, obligations, demands, contract rights, and claims against Defendants, separately and jointly, including any parent companies, subsidiaries, divisions, related or affiliated companies, predecessors, successors or assigns, current or former employees, agents, shareholders, officers, directors, and alter egos, and their respective spouses, heirs, executors, testators, representatives, agents, successors and assigns, in their individual and representative capacities (the "Releasees") that may have arisen from the beginning of time until and including the date of Plaintiff's signature on this Agreement. . . . This waiver and release includes all claims now known to Plaintiff as well as all possible claims that are not known to Plaintiff.

*Id.* at 3–4.

---

[1] Madzelan does not explain this change in his billing rate.

4

Some courts in this District have refused to approve settlement agreements containing such overbroad releases. *See Lazaro-Garcia v. Sengupta Food Servs.*, No. 15 Civ. 4259 (RA), 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) (finding a similar release provision to be overbroad, and citing cases); *see also Nights of Cabiria*, 96 F. Supp. 3d at 181 (courts typically reject releases that "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues"). However, courts have sometimes found such releases fair and reasonable when the conditions are mutual, and when they do not bind any absent class members. *See Weng v. T & W Rest., Inc.*, 15 Civ. 8167 (PAE) (BCM), 2016 WL 3566849, at *5 (S.D.N.Y. June 22, 2016).

The Court declines to approve this broad release for several reasons. First, the release is overbroad, waiving "all possible claims," Doc. 33-1 at 3, including unknown claims and those unrelated to wage-and-hour issues. *See Nights of Cabiria*, 96 F. Supp. 3d at 181. Second, the release is non-mutual; Rodriguez agrees to release claims, but defendants do not. Courts in this District routinely reject non-mutual releases that only protect the defendants. *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 Civ. 5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016). Third, unlike cases where broad releases were approved, this release does not just prohibit Rodriguez's claims against the individual defendants. *See Weng*, 2016 WL 3566849, at *5. Instead, it prohibits claims against defendants and a long list of associates.

### B.   No Re-Hire Provision

The Court also cannot approve the agreement's no re-hire provision, pursuant to which Rodriguez agrees that he "will not at any time in the future seek employment" with defendants or any of defendants' listed associates. Doc. 33-1 at 5. Such a no-hire provision is "highly restrictive" and "in strong tension with the remedial purposes of the FLSA." *Baikin v. Leader*

5

*Sheet Metal, Inc.*, No. 16 Civ. 8194 (ER), 2017 WL 1025991, at *1 (S.D.N.Y. Mar. 13, 2017) (citation omitted); *see also Cruz v. Relay Delivery, Inc.*, No. 17 Civ. 7475 (JLC), No. 18 Civ. 3052 (JLC), 2018 WL 4203720, at *1 (S.D.N.Y. Sept. 4, 2018) (declining to approve a no re-hire provision and citing cases).

### B. Non-Disparagement Clause

Last, the settlement contains an impermissible non-disparagement clause. Courts in this District routinely reject proposed settlement agreements that contain non-disparagement clauses, as they "bar plaintiffs from openly discussing their experiences litigating [their] wage-and-hour case[s]" and "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Lopez*, 96 F. Supp. 3d at 178 (quotation omitted). "While 'not every non-disparagement clause in an FLSA settlement is *per se* objectionable,' a clause which bars a plaintiff from making negative statements about a defendant 'must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case.'" *Weng*, 2016 WL 3566849, at *4 (quoting *Lopez*, 96 F. Supp. 3d at 180 n.65).

Here, the non-disparagement provision requires that Rodriguez "not make any disparaging statement(s) or representation(s), either directly or indirectly, whether orally or in writing, to any person whatsoever, about the Company, the Defendants, the Releasees, including but not limited to their co-workers, attorneys, representatives, affiliates, parent companies, subsidiaries, family members, or any of their directors, officers, employees, attorneys, agents, or representatives." Doc. 33-1 at 5. The provision defines a disparaging statement or representation as "any communication which, if publicized to another, would cause or tend to cause the recipient of the communication to question the business condition, integrity, competence, good character, or product quality of the person or entity to whom the communication relates.

6

*Id.* Under its plain terms, this provision bars Rodriguez from making truthful statements regarding his wage-and-hour claims that may fall within these definitions, *see Lopez*, 96 F. Supp. 3d at 180 n.65, and the agreement lacks a carve-out to allow Rodriguez to make those statements, *see Weng*, 2016 WL 3566849, at *4. Accordingly, the term is not fair and reasonable.

### III.   CONCLUSION

The request for settlement approval is therefore DENIED without prejudice. The parties are therefore instructed to do one of the following by May 6, 2022:

- Submit a revised agreement to the Court. The revised agreement shall remove or tailor the release, no re-hire, and non-disparagement provisions as described in this Order;
- File a joint letter that indicates the parties' intention to abandon settlement and continue to trial, at which point the Court will reopen the case and set down a date for a pre-trial conference; or
- Stipulate to dismissal of the case without prejudice, which the Court need not approve under current Second Circuit case law. *See Cheeks*, 796 F.3d at 201 n.2.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 33.

It is SO ORDERED.

Dated:   April 26, 2022
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.